774 So.2d 1054 (2000)
George M. WOLCOTT, et al., Plaintiffs-Appellants,
v.
TRAILWAYS LINES, INC., et al., Defendants-Appellees.
No. 34,071-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*1055 Onebane, Bernard, Torian, Diaz & McNamara by Frank H. Spruiell, Jr., Jones, Odom, Davis & Politz, L.L.P., by J. Marshall Jones, Jr., James W. Davis, Counsel for Appellants.
Cook, Yancey, King & Galloway, by Sidney E. Cook, Jr., G. Brian Baker, Counsel for Appellee Ranger Insurance Company.
Lunn, Irion, Salley, Carlisle & Gardner by Brian D. Smith, Counsel for Appellee, Bobby E. Haley, Jr.
Before CARAWAY, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
Plaintiffs, Holton J. Wolcott, Jr., John F. Wolcott, George M. Wolcott, Janet Wolcott Dickerson and Joan Wolcott Lane, appeal from this wrongful death/survival action, the grant of an exception of res judicata dismissing Defendant, Bobby Haley, Jr., and the grant of an exception of No Right of Action and/or No Cause of Action dismissing Defendant, Ranger Insurance Company. For the reasons stated herein, we reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
On October 4, 1985, Kathryn Wolcott, a Louisiana resident, was riding as a passenger on a bus which was owned and operated by Trailways Lines, Inc. and driven by a Trailways Lines, Inc. employee, Bobby Haley, Jr. The bus was traveling from Shreveport, Louisiana, to Canada on a "fall foliage" tour, for which Mrs. Wolcott was acting as tour guide. The bus was involved in an accident while traveling through Illinois and Mrs. Wolcott sustained fatal injuries. On October 3, 1986, Mrs. Wolcott's children, Plaintiffs herein, filed a wrongful death/survival action against Trailways Lines, Inc. and Mr. Haley. On June 23, 1987, Trailways Lines, Inc. filed a Certificate of Amendment of Restated Certificate of Incorporation with the Secretary of State of Delaware, changing its name to TLI, Inc.
In early 1996, Plaintiffs added National Union Insurance Company ("National Union") and Ranger Insurance Company ("Ranger") as defendants on the theory that these companies provided liability insurance coverage for Trailways Lines, Inc. and Mr. Haley at the time of the October 4, 1985 accident. The parties do not dispute that any insurance policy naming Trailways Lines, Inc. as an insured would also cover as additional insureds any employee of Trailways Lines, Inc., such as Mr. Haley, pursuant to the respective policy's omnibus clause while the said policy was in full force and effect.
In July 1996, Plaintiffs settled for $30,000[1] with National Union and an entity named New Trails, Inc., one of National Union's named insureds, because it was disputed as to whether National Union insured Trailways Lines, Inc. and its employees at the time of the October 4, 1985 accident. The document, entitled "Receipt and Release," provided, in pertinent part, as follows:
[I acknowledge receipt of $30,000.00 from] National Union Fire Insurance Company of Pittsburgh, PA on behalf of its insured, New Trails, Inc., in full and complete compromise and satisfaction of any and all claims, causes of action, actions and demands of any nature whatsoever which I now have, or which I might hereafter have against National Union Fire Insurance Company of Pittsburgh, PA and New Trails, Inc., and any and all persons for whom either might be liable or responsible growing out of the accident which occurred on October 4, 1985. (Emphasis added.)
*1056 National Union was dismissed by judgment of the trial court on August 13, 1996. The judgment provided, in pertinent part, as follows:
IT IS HEREBY ORDERED that the demands of George M. Wolcott, John F. Wolcott, Janet W. Dickerson, Joan W. Lane and Holton J. Wolcott, Jr., plaintiffs against National Union Fire Insurance Company of Pittsburgh, PA, defendant, hereby [sic] is dismissed, with prejudice, with all rights reserved against any defendant not specifically dismissed herein. (Emphasis added.)
In June 1997, the trial court issued an opinion granting summary judgment in favor of Plaintiffs and against Ranger, holding that Ranger's policies provided coverage for this accident. The opinion, however, contemplated the signing of a final judgment on the question of coverage, but no final judgment appears in the index of this record or, from this court's review, in the record itself.
On November 13, 1997, a peremptory exception of res judicata was filed on behalf of Mr. Haley, asserting the following:
When plaintiffs signed the Receipt and Release, they released `National Union Fire Insurance Company of Pittsburg, Pa. and New Trials, Inc., and any and all persons for [whom] either might be liable or responsible growing out of the accident which occurred on October 4, 1985.' Bobby Haley, Jr. is an omnibus insured under the National Union policy at issue. Since Bobby Haley, Jr. is a person for whom National Union is liable, he was released by plaintiffs under the clear wording of the Receipt and Release signed by all plaintiffs.
Ranger filed an exception of No Right of Action and/or No Cause of Action with respect to its liability, asserting that, if Mr. Haley was released by the compromise, then Ranger, as Mr. Haley's insurer, was likewise released. Trailways Lines, Inc. did not file any exceptions. The next day, the trial court denied these exceptions in open court; but, on August 12, 1998, the trial court reversed itself and signed a judgment sustaining the exceptions filed by Mr. Haley and Ranger.
On September 30, 1998, Plaintiffs appealed; and, on January 28, 1999, this court issued to the appellants a rule to show cause why the appeal should not be dismissed as taken from an uncertified partial final judgment. On February 22, 1999, the district court certified the judgment as suitable for immediate appeal, but that ruling did not timely reach this court; and, on February 25, 1999, this court dismissed the appeal without prejudice.
According to a stamp on the judgment, the clerk of the district court mailed notice of the certification to the parties on February 23, 1999. On March 25, 1999, Plaintiffs filed another motion for appeal, and the court granted the motion for appeal that same day. On March 14, 2000, the trial court fixed the return date, and the appeal is now before this court for decision.
Plaintiffs assert on appeal the following assignments of error:
1) The trial court erred when it sustained the peremptory exception of res judicata and dismissed all claims against Mr. Haley.
2) The trial court erred when it sustained the peremptory exception of no cause of action and/or no right of action and dismissed all claims against Ranger.
3) The trial court erred when it sustained Mr. Haley's and Rangers's motion in limine excluding parole evidence offered by the Plaintiffs on the issue of their "intent" in executing the Release and order of dismissal, yet admitted parole evidence (i.e. the National Union Policy) offered by Mr. Haley and Ranger on the issue of Plaintiffs'"intent."

DISCUSSION
The first question presented is whether the language contained in Plaintiffs' "Receipt *1057 and Release" with National Union encompassed Plaintiffs' action against Mr. Haley, as an employee of Trailways Lines, Inc., thereby releasing him as well, making any further suit against him res judicata. Given the language of the respective insurance policies and the peculiar circumstances of this case, we find that Plaintiffs' action against Mr. Haley was not affected by the compromise.

Who was insured by the National Union policy?
The insurance policy in question issued by National Union names as its insureds New Trails, Inc., Trailways, Inc. and subsidiaries. Trailways Lines, Inc. is not listed in the policy as a named insured or as a subsidiary of New Trails, Inc. or Trailways, Inc. As a matter of fact, nowhere in the policy is Trailways Lines, Inc. ever mentioned.
In their original petition, Plaintiffs name Trailways Lines, Inc. and Mr. Haley as defendants. In paragraph three of their original petition, Plaintiffs state that Mr. Haley was an agent, servant and employee of Trailways Lines, Inc. In their answer to Plaintiffs' original petition, Trailways Lines, Inc. and Mr. Haley admit the allegations of paragraph three, that Mr. Haley was an agent, servant or employee of Trailways Lines, Inc.
National Union never insured Trailways Lines, Inc., Mr. Haley's employer; and, therefore, Mr. Haley would not be an insured of National Union under its omnibus clause. Despite the contentions of Mr. Haley to the contrary, since neither he nor his employer were ever insureds of National Union, we find that the "catch-all" language of the compromise, "and any and all persons for whom either might be liable or responsible growing out of the accident," did not apply to Mr. Haley as one for whom National Union or New Trails, Inc. would be liable.

Intent
In addition, we further find that Plaintiffs had no intention of releasing Mr. Haley by the language contained in the compromise with National Union and New Trails, Inc.
La. C.C. art. 3071 provides, in part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
La. C.C. art. 3078 provides:
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
La. R.S. 13:4231, as it read at the time of the October 4, 1985 accident, provided:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
A valid compromise can form the basis of a plea of res judicata. Brown v. Drillers, 93-1019 (La.1/14/94), 630 So.2d 741. In this case, as in Brown, supra, Plaintiffs do not attack the validity of the instrument, but, instead, argue that it does not extend to their claims against Mr. Haley and Ranger. Accordingly, Mr. Haley and Ranger have the burden of proving that the release in the compromise did extend to those claims. Id.
The supreme court in Brown, supra, set forth a four-prong test in its application of La. C.C. art. 3073 in interpreting what claims were clearly contemplated to be covered by a compromise. La. C.C. art 3073 states:
Transactions regulate only the differences which appear clearly to be comprehended *1058 in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
The four-prong test developed by the supreme court is as follows:
[1] Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties;
[2] Whether it be explained in a general or particular manner;
[3] Unless it be the necessary consequences of what is expressed; and
[4] They do not extend to differences which the parties never intended to include in them.
Application of this test to the case sub judice follows.

[1] Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties
The language of the "Receipt and Release" conspicuously names only National Union and its insured, New Trails, Inc., to be released. Neither Trailways Lines, Inc., Mr. Haley nor Ranger are mentioned in the compromise. Further, the language of the dismissal only names National Union as the defendant to be released and specifically reserves all rights against any defendant not named in the dismissal. We find, therefore, that the only difference clearly comprehended by the parties to the compromise is that difference between Plaintiffs, National Union and New Trails, Inc., as named participants to the "Receipt and Release."

[2] Whether it be explained in a general or particular manner
The parties specifically referred to the release of National Union and New Trails, Inc. The supreme court in Brown, supra, stated that it recognized that the failure to use contractual language which clearly provides for the waiver of an action evidences a lack of intent to compromise that action. By analogy, we find that, where there is specific language naming certain parties, there is a lack of intent to include those parties which are not named in the release. As further evidence of the lack of such an intent, we again note that the dismissal specifically reserves Plaintiffs' rights against those defendants not named and the fact that neither Mr. Haley nor Trailways Lines, Inc. was ever an insured of National Union.
Also in Brown, supra, the supreme court further questioned whether the parties to the compromise adverted to or paid attention to the specific causes of action, or in this case, release of specific parties. We find that the circumstances surrounding this compromise do not suggest such contemplation. It is clear from the amount of the compromise that a release of the entirety of the wrongful death action was not contemplated by the parties.

[3] Unless it be the necessary consequences of what is expressed
We do not find that the release of National Union and New Trails, Inc. leads to the "necessary consequence" of the release of Mr. Haley or Ranger. National Union did not insure Mr. Haley's employer, Trailways Lines, Inc. and did not, therefore, provide coverage to Mr. Haley under its omnibus clause. Releasing National Union has no effect on Mr. Haley because he is not an insured, nor did the evidence show that Mr. Haley had any relationship with New Trails, Inc. As previously stated, the "catch-all" language of the "Receipt and Release," therefore, does not include Mr. Haley as one for whom National Union or New Trails, Inc. would be liable.
*1059 It thus follows that Ranger, who insured Trailways Lines, Inc. and Mr. Haley, is not released by way of consequences either. Since neither of Ranger's insureds were released, Ranger is still obligated to defend its insureds.

[4] They do not extend to differences which the parties never intended to include in them
Finally, it is clear by the language of the "Receipt and Release" and the dismissal that the parties only intended to release National Union and New Trails, Inc. Since National Union did not actually insure Trailways Lines, Inc., the parties could not have intended to release Mr. Haley as Trailways Lines, Inc.'s employee.

National Union policy had been cancelled prior to October 4, 1985
Aside from the lack of intent on the part of Plaintiffs, even assuming, arguendo, that Trailways Lines, Inc. and its employees had been insured under National Union's policy, we find that the National Union policy did not provide coverage for Trailways Lines, Inc. or its employees on October 4, 1985, because the said policy had been effectively cancelled prior to that date.
Exhibits to this appeal include copies of both the National Union and Ranger policies and their declarations pages. The Ranger policy has several declarations pages. The earliest declarations page indicates that Ranger's coverage began on January 1, 1981; and, among the other pages, is a page specifying coverage from May 1, 1985, to May 1, 1986, a period clearly encompassing the date of the accident herein sued on. The declarations page for the National Union policy specifies that the policy period is from January 1, 1980, until January 1, 1981. There are no other National Union declarations pages, and nothing in the policy itself suggests that the National Union policy provided insurance for this 1985 accident (or, as previously stated, that Trailways Lines, Inc. was ever a named insured).
Plaintiffs' second amended and supplemental petition was filed January 4, 1996, however, and added National Union as a defendant. This supplement stated specifically:
13.
At the time of this accident, there was in full force and effect a policy of liability insurance issued by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL UNION"), bearing policy number 145 31 61 (the "Liability Policy.") The Liability Policy issued by NATIONAL UNION insures Defendant Trailways Lines, Inc. and / or its subsidiaries ("TRAILWAYS") for its liability in connection with the October 4, 1985 accident and death of Kathryn H. Wolcott.
14.
Pursuant to Louisiana Revised Statute[s] 45:161 et seq., the Office of the Louisiana Public Service Commission requires the filing of a Uniform Certificate of Insurance evidencing liability insurance for publicly-licensed carriers, such as TRAILWAYS. Based upon information and belief, NATIONAL UNION filed a "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance" with the Louisiana Public Service Commission on January 2, 1980, certifying that a policy of liability insurance was issued in favor of TRAILWAYS effective January 1, 1980.
15.
The Certificate contains a required policy endorsement which provides that cancellation of the Liability Policy may be effected by NATIONAL UNION or TRAILWAYS by giving thirty days written notice to the Louisiana Public Service Commission. Once written notice is given to the Commission, the *1060 policy is effectively cancelled thirty days from the date of said notice.
16.
Based upon information and belief, prior to October 4, 1985, neither National Union nor Trailways filed a written notice of cancellation with the Louisiana Public Service Commission. As a result, the Liability Policy issued by NATIONAL UNION was never terminated and remained in full force and effect on the date of the accident.
The "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance," or Form E, contained a required policy endorsement which provided that cancellation of the liability policy may be effected by National Union or Trailways, Inc. (the Form E does not list New Trails, Inc.) by giving thirty days written notice to the Louisiana Public Service Commission ("LPSC"). Once written notice is given to the LPSC, the policy is effectively cancelled thirty days from the date of said notice. Plaintiffs noted that, prior to October 4, 1985, neither National Union nor Trailways, Inc. filed a written notice of cancellation with the LPSC; and, therefore, Plaintiffs argued that the liability policy issued by National Union was never terminated and remained in full force and effect on the date of the accident. Form E is a document required to be filed, inter alia, with the Interstate Commerce Commission ("ICC") and the LPSC. The Form E, stamped as received by the LPSC on January 2, 1980, indicates that the National Union policy covering "Trailways Southern Lines, Inc." went into effect on "1-1-80" and does not specify a termination date. Another Form E concerning the National Union policy, beginning on "1-1-80" covering "Trailways, Inc.," is stamped as received by the LPSC on February 29, 1980. No party has shown that the ICC or LPSC received any certificate showing the National Union policy to be cancelled.
This record also contains, however, as an exhibit, copies of Form E filings concerning the Ranger policy. The (chronologically) first form, stamped as received by the LPSC on January 12, 1981, shows that the Ranger policy covered "Trailways Southern Lines, Inc." from "1-1-81." Another Form E, stamped as received on a mostly illegible date that appears to be sometime in January 1981, shows coverage by Ranger for "Trailways, Inc." from "1-1-81." The record contains other Form Es pertaining to the Ranger policy; the form stamped as received by the LPSC on January 9, 1984, for coverage effective from "7-12-83," specifies coverage for "Trailways Lines, Inc."
Form E specifies that:
This certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the office of the Commission.
This is in keeping with the former Code of Federal Regulations ("C.F.R.") 49 § 1043.7(d)[2], which provided, in part:
(d) Cancellation notice. Except as provided in paragraph (e) of this section,... certificates of insurance ... shall not be cancelled or withdrawn until 30 days after written notice has been submitted to the Commission at its offices in Washington, DC, on the prescribed form (Form BMC-35, Notice of Cancellation Motor Carrier Policies of Insurance under 49 U.S.C. 10927, and BMC-36, Notice of Cancellation Motor Carrier and Broker Surety Bonds, as appropriate) by the insurance company, surety or sureties, motor carrier, broker or other party thereto, as the case may be, which period of thirty (30) days shall *1061 commence to run from the date such notice on the prescribed form is actually received by the Commission. (Emphasis added.)
Paragraph (e) provided, in part:
(e) Termination by replacement. Certificates of insurance or surety bonds which have been accepted by the Commission under these rules may be replaced by other certificates of insurance, surety bonds or other security, and the liability of the retiring insurer or surety under such certificates of insurance or surety bonds shall be considered as having terminated as of the effective date of the replacement certificate of insurance, surety bond or other security, provided the said replacement certificate, bond or other security is acceptable to the Commission under the rules and regulations in this part. (Emphasis added.)
The LPSC also has authority over these matters; see La. R.S. 45:163 D(1)(c). See also La. R.S. 45:173 and 45:174, the latter providing:
The policy or bond provided in R.S. 45:173 shall provide that ten days' notice in writing shall be given to the commission of intention to cancel the policy or bond. If the policy or bond is cancelled, or in the event it should lapse for any reason, the contract carrier by motor vehicle shall replace the policy or bond with another.
A January 12, 1976 order of the LPSC mirrors and amplifies these rules; the order provides:
All initial insurance filings, and filings to replace expiring or expired insurance coverage shall be made on a continuous basis to remain in effect until canceled on not less than thirty (30) days notice, from date of receipt of such notice by the office of the Commission in Baton Rouge, Louisiana with the following exceptions:
(a) Filings for short periods of time will be permitted to connect coverage under separate permanent filings so as to provide continuous coverage.

(b) Thirty (30) days notice of cancellation will be waived where an acceptable replacement is received effective at a date earlier than that required by such notice, provided the replacement continues the coverage without lapse. (Emphasis added.)
Even if National Union failed to file the appropriate notices of cancellation with the ICC and LPSC, Ranger's Form Es clearly demonstrate coverage by that company beginning January 1, 1981, which is continuous with the December 31, 1980 termination of the National Union policy. Under the plain language of both the federal and state rules, the filing of the Form E proving the replacement of the National Union policy with the Ranger policy/policies was sufficient to terminate Trailways, Inc.'s coverage under the National Union policy. Since there was continuous coverage, the purpose of the filing statutes was fulfilled.
Accordingly, National Union provided neither Trailways, Inc. (or Trailways Lines, Inc.) nor Mr. Haley coverage for this 1985 accident under the 1980 policy. Since National Union provided no coverage, it could not be responsible for damages allegedly caused by Mr. Haley in the 1985 accident under the "Receipt and Release" clause "any and all persons for whom either might be liable or responsible growing out of the accident which occurred on October 4, 1985."

Ranger's Exception of No Cause of Action and/or No Right of Action
This brings us to Ranger's Exception of No Cause of Action and/or No Right of Action. Ranger asserts that, when Plaintiffs signed the release, they released National Union, New Trails, Inc. and "any and all persons for either might be liable or responsible growing out of the accident which occurred on October 4, 1985." Ranger then argues that Mr. Haley is an omnibus insured under the National Union *1062 policy at issue; and, since he is a person for whom National Union is liable, he was released by Plaintiffs under the release as well. Ranger fails to explain how or why Mr. Haley is an omnibus insured of National Union.
Ranger next asserts that, since its insured, Trailways Lines, Inc., can only be held vicariously liable for acts of negligence of Mr. Haley, and Mr. Haley is released, then Plaintiffs have no cause of action or right of action against it. Although we agree that, absent any independent negligence on its part, an action can only be taken against Ranger for acts of negligence on the part of Mr. Haley, we do not agree that Mr. Haley is released.
As stated above, Mr. Haley is an employee of Trailways Lines, Inc., a company that was never insured by National Union. Mr. Haley, therefore, could never be an insured under National Union's omnibus clause and, therefore, could not be released by a release of National Union. Since Mr. Haley, an employee of Ranger's insured, is still a party to the suit, the trial court erroneously granted Ranger's Exception of No Cause of Action and/or No Right of Action.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed equally to Defendants, Bobby E. Haley, Jr. and Ranger Insurance Company.
REVERSED AND REMANDED.
NOTES
[1] This allegedly was the nuisance value of the claim. The "nuisance" value of a claim is generally considered to be the cost of defending a claim in which it is doubtful the plaintiff will prevail, but is unwilling to simply dismiss.
[2] See now 49 C.F.R. 387.313(d) and (e).