# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-632


WADE PHILLIPS, ET AL.

VERSUS

NEW HAMPSHIRE INSURANCE COMPANY, ET AL.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 105,872
HONORABLE RICHARD E. STARLING, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and Marc T. Amy, Judges.

**REVERSED AND REMANDED.**


**Thomas O. Wells**
**Post Office Box 13438**
**Alexandria, LA   71315**
**(318) 445-4500**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **Jackie D. Hampton, Jr.**
   **Cenla Courier Services, Inc.**
   **Bobby Adrian Patrick**

**David L. Roberson, II**
**Bolen, Parker, Brenner,**
**Lee & Gremillion Ltd.**
**Post Office Box 11590**
**Alexandria, LA   71315-1590**
**(318) 445-8236**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **James Thomasee**
   **Jim Thomasee Insurance Agency, Inc.**

Russell L. Potter
Stafford, Stewart & Potter
Post Office Box 1711
Alexandria, LA   71309
(318) 487-4910
COUNSEL FOR DEFENDANTS/APPELLEES:
     Metropolitan Inurance Group Property and Casualty Company
     Metropolitan Group Property and Casualty Insurance Company

Philip G. Hunter
Hunter & Morton
Post Office Box 11710
Alexandria, LA   71315-1710
(318) 487-1997
COUNSEL FOR PLAINTIFFS/APPELLEES:
     Mary Beth Phillips
     Wade Phillips

Michael H. Rubin
Juston M. O'Brien
Jamie D. Seymour
McGlinchey Stafford, PLLC
One American Place, 14th Floor
Baton Rouge, LA   70825
(225) 383-9000
COUNSEL FOR DEFENDANT/APPELLANT:
     New Hampshire Insurance Company

Marjorie B. Breaux
Daigle, Jamison and Rayburn, LLC
Post Office Box 3667
Lafayette, LA 70502
(337) 234-7000
COUNSEL FOR DEFENDANT/APPELLANT:
     New Hampshire Insurance Company

AMY, Judge.

A car accident occurred on May 29, 2006. The plaintiffs, alleging that the driver was in the course and scope of his employment, sued the driver's alleged employer and its insurer, among other defendants. The plaintiffs, the insurance agent, and the alleged employer filed a joint motion for summary judgment, seeking a judicial declaration that the insurer issued a policy affording coverage on the date of the accident. The trial court granted the motion based on its finding that La.R.S. 45:173 and La.R.S. 45:174 make cancellation of a common carrier insurance policy contingent on notification of the cancellation to the Louisiana Public Service Commission (LPSC) and the insurer's failure to provide such notice. The insurer appeals. For the following reasons, we reverse and remand.

**Factual and Procedural Background**

On May 29, 2006, the plaintiffs' son, Justin Phillips, was involved in an automobile accident with Jackie Hampton. Hampton was allegedly operating the 1997 Mercury Grand Marquis in the course and scope of his employment with Cenla Taxi and Courier Service, Inc. (Cenla Courier), a business insured by New Hampshire Insurance Company (New Hampshire). Bobby Patrick is the sole owner of several businesses, including Cenla Courier and Cenla Dispatch Company. Patrick's other businesses were insured by Progressive Insurance Company (Progressive). Cenla Courier contracted with the military to provide transportation for military personnel. This contract required insurance coverage of one million dollars; thus, Patrick procured, via the Jim Thomasee Insurance Agency, higher insurance limits through New Hampshire for Cenla Courier.

New Hampshire issued a policy to Cenla Courier (originally under the name of Crew Livery Transport), bearing the effective dates of October 12, 2005 to October

12, 2006. The record shows that the policy only listed a 1996 Ford van as a covered vehicle. As evidenced in the record, the LPSC initially rejected Cenla Courier's filing request due to a lapse of coverage. According to a letter addressed to the insurance agency, New Hampshire advised Cenla Courier and/or its producer, to address the problem with the Louisiana Department of Motor Vehicles and resubmit its request upon resolution of the problem. The record indicates that Cenla Courier later requested that the Jim Thomasee Insurance Agency (not New Hampshire) file the policy with the LPSC.

According to Patrick's deposition, Cenla Courier ceased its business operations prior to the May 26, 2006 accident. He stated that he made an oral request to the Jim Thomasee Insurance Agency that his policy with New Hampshire be cancelled and that Progressive provide insurance coverage for all of his company vehicles. Patrick testified that he did not pay the February 2006 premium owed to New Hampshire. In turn, the record indicates that New Hampshire mailed a notice of cancellation to Cenla Courier to be effective March 8, 2006. Testimony reveals that there was a discrepancy as to whether this notice was received. On the basis of this discrepancy, New Hampshire's motion for summary judgment regarding cancellation of the policy was denied.

On November 27, 2007, the plaintiffs, James Thomasee, the Jim Thomasee Insurance Agency, and Bobbie Patrick filed a joint motion for summary judgment on the ground that "[New Hampshire] failed to cancel its policy that afforded coverage on the date of the accident at issue." The movers urged that the vehicle involved in the accident was covered as a "temporary substitute auto" as per a provision in the insurance policy. The trial court, relying on New Hampshire's lack of notification to

2

the LPSC, granted summary judgment. New Hampshire appeals, asserting several assignments of error:

1. The trial court erred as a matter of law when it granted summary judgment because the insurance policy was never put into evidence and the movers failed to carry their burden of proof to show that insurance coverage existed.

2. The trial court erred as a matter of law in granting summary judgment when it held that cancellation of a commercial carrier's insurance was ineffective solely because the Louisiana Public Service Commission purportedly did not receive notice of cancellation.

3. The trial court erred as a matter of law when it granted summary judgment despite unresolved issues of material fact regarding whether New Hampshire's insured was involved in the accident, whether the vehicle involved qualified as a temporary substitute vehicle under the policy, and whether the policy was cancelled for failure to pay premiums.

## Discussion

*Burden of Proof*

Appellate courts conduct a de novo review of motions for summary judgment, making the same inquiries as the trial court in determining the appropriateness of summary judgment. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citation omitted). "If evidence presented is subject to conflicting interpretations, summary judgment is not proper."

3

*Federated Rural Elec. Ins. Corp. v. Gulf S. Cable Inc.*, 02-0852, p. 4 (La.App. 3 Cir. 12/11/02), 833 So.2d 544, 546-547.

Initially, the burden of proof remains with the mover to show that genuine issues of material fact do not exist. "However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment," he need not "negate all essential elements of the adverse party's claim" but he must point out that "there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense." La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" *Id.*

*Evidence in the Record*

New Hampshire argues that the insurance policy was never entered into the record by the movers. As stated above, La.Code Civ.P. art. 966(B) describes what a court may consider in its determination of a summary judgment motion, namely: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]" Further, La.Code Civ.P. art. 967(A) explains the kinds of documents that can be submitted by a party in support of or in opposition to a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . .. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

4

The supreme court in *Aydell v. Sterns*, 98-3135, p. 1 (La. 2/26/99), 731 So.2d 189, 190 held that evidence presented as an attachment to the memorandum in support of or in opposition to the motion for summary judgment is properly before the court, reasoning that to hold otherwise "undermines the use of summary judgment procedures to 'secure the just, speedy, and inexpensive determination of every action.' La.C.C.P. art. 966(A)(2)." Furthermore, in *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 4 (La. 2/20/04), 866 So.2d 228, 232, the supreme court stated that "[a]ffidavits in support of or in opposition to motions for summary judgment must be filed into evidence at the hearing on the motion or filed into the record in order for the affidavits to be part of the record on appeal."

New Hampshire argues that *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88 mandates that "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record." However, *Denoux* addressed a peremptory exception of prescription governed by La.Code Civ.P. art. 931[1], not a motion for summary judgment governed by La.Code Civ.P. art. 966.

Insofar as New Hampshire contends that the policy under which coverage is sought (policy number 416-28-390) is not contained in the record, we address this omission below. However, insofar as the movers' motion for summary judgment

---

[1] **Art. 931. Evidence on trial of peremptory exception**

On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.

When the peremptory exception is pleaded in the trial court after the trial of the case, but prior to a submission for a decision, the plaintiff may introduce evidence in opposition thereto, but the defendant may introduce no evidence except to rebut that offered by plaintiff.

No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.

questions the effectiveness of cancellation, we note that the record contains the affidavit of Milton West, the underwriting manager for New Hampshire, wherein Mr. West attests to the existence of a policy, bearing the number 416-28-390 with effective dates of October 12, 2005 to October 12, 2006. Further, the declarations page for the relevant policy, which provides, at a minimum, the policy number, the named insured, the policy limits, and the covered auto, was filed into the record as per the attachment to the mover's Memorandum in Support of Joint Motion for Summary Judgment. The presence of the affidavit and the declarations page are sufficient for a discussion of the parties' arguments regarding cancellation insofar as they establish, not coverage, but the *existence* of a policy.

*Notice Requirement*

In its second assignment of error, New Hampshire contends that the trial court erred by holding that La.R.S. 45:173 and La.R.S. 45:174 require LPSC to receive notice of the cancellation of a commercial carrier's policy in order for said cancellation to have effect.[2] Louisiana Revised Statutes 45:173 and 45:174 provide:

---

[2] The trial court's reasons for judgment:

> However, there is a legal issue that must be decided, even if Mr. Patrick received notice of cancellation. Louisiana Revised Statutes 45:173 and 45:174 require that a policy of liability insurance issued to a common carrier shall provide ten days notice of intention to cancel the policy which shall be given to the LPSC. While the cases addressing this issue do not specifically state the purpose of these statutes, it would seem clear that the LPSC must be notified of the cancellation of the policy by the carrier to protect the public. It allows the LPSC to take corrective action to make sure a common carrier is not operating vehicles on a public roadway without insurance or a bond to cover damages to innocent third parties. Notification by the insurance carrier to the LPSC to effectuate a valid cancellation is consistent with holdings of the First and Second Circuit Louisiana Appellate Courts. Walcott v. Trailways Lines, Inc. 774 So.2d 1054 (La.App.2d Cir. 2000); St. Paul Marine and Insurance Company v. Roubion 252 So.2d 679 (La. App. 1st Cir. 1071). Accordingly, the court holds that the moving parties Wade Phillips and Mary Beth Phillips, individually, and on behalf of Justin Phillips and James Thomasee and the Jim Thomasee Insurance Agency, Inc. and Bobby Adrian Patrick are entitled to Summary Judgment against New Hampshire Insurance Company recognizing that New Hampshire Insurance Company afforded liability insurance coverage for the accident at issue.

6

**§ 173. Contract carriers; liability policy or bond required**

Every motor carrier, as defined in R.S. 45:162(10), not exempted by R.S. 45:177, using the highways shall file with the Louisiana Public Service Commission, a liability insurance policy or bond satisfactory to the commission of a company authorized to do business in this state. For contract carriers of passengers, other than a contract carrier by bus, the policy or bond shall be not less than five thousand dollars for the death or injury to any one person and thirty thousand dollars total liability for any one accident, and for contract carriers of property the policy or bond shall be not less than five thousand dollars for the death or injury to any one person and ten thousand dollars total liability for any one accident.

**§ 174. Cancellation of bond or policy**

The policy or bond provided in R.S. 45:173 shall provide that ten days' notice in writing shall be given to the commission of intention to cancel the policy or bond. If the policy or bond is cancelled, or in the event it should lapse for any reason, the contract carrier by motor vehicle shall replace the policy or bond with another.

In review of the question posed by the motion for summary judgment, we are mindful of the rules of statutory construction. Louisiana Revised Statutes 1:3 provides:

Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

The word "shall" is mandatory and the word "may" is permissive.

Louisiana Revised Statutes 1:4 provides:

When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.

Further, the supreme court has explained:

The fundamental question in all cases of statutory interpretation is legislative intent. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695, p. 11 (La. 6/29/01), 808 So.2d 294, 302; *Succession of Boyter*, 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of

the legislature. *Id.; Stogner v. Stogner*, 98-3044, p. 5 (La. 7/7/99), 739 So.2d 762, 766.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. *SWAT 24 Shreveport Bossier*, 2000-1695 at p. 11, 808 So.2d at 302; *Succession of Boyter*, 99-0761 at p. 9, 756 So.2d at 1129. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. *Id*.

Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. *Sultana Corporation v. Jewelers Mutual Insurance Company*, 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. *St. Martin Parish Police Jury v. Iberville Parish Police Jury*, 212 La. 886, 33 So.2d 671, 676 (1947); *State v. Fontenot*, 112 La. 628, 36 So. 630, 634 (1904). Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction. *Sultana Corporation*, 03-0360 at p. 9, 860 So.2d at 1119.

*Moss v. State*, 05-1963, pp. 15-16 (La. 4/4/06), 925 So.2d 1185, 1196.

We review the mover's argument in light of the above principles of statutory interpretation. While La.R.S. 45:173 and La.R.S. 45:174 anticipate that an applicable policy will require the notification of the LPSC upon cancellation, they do not designate the party responsible for notification. Nor do the statutes contain a provision that makes cancellation effective solely upon the receipt of said notice. We do not impose this provision or read it into the law. *See Perritt v. Dona*, 02-2601 (La. 7/2/03), 849 So.2d 56. For this reason, the trial court erred in rendering summary judgment on the basis that the cancellation was not effective due to a lack of notice.

We note that the movers and the trial court relied on *Wolcott v. Trailways Lines, Inc.*, 34,071 (La.App. 2 Cir. 12/06/00), 774 So.2d 1054 and *St. Paul Fire Marine & Ins. Co. v. Roubion*, 252 So.2d 679 (La.App. 1Cir. 1971), to support the

8

assertion that the LPSC must receive notice before cancellation is effective. However, in *Wolcott,* 774 So.2d 1054, a Form E[3] was present and cancellation of the policy was determined by the terms of the form. The court did not find that the statutes, alone, dictated coverage or cancellation. Ultimately, the second circuit held that replacement of one insurer with another constitutes termination of coverage by the first insurer, without reaching the issue now before the court of whether notification to the LPSC is a prerequisite to termination of coverage. Similarly, *St. Paul Marine and Insurance Company*, 252 So.2d 679 is distinguishable from this matter, as the issue of coverage in the former case was decided, again, upon the language of the endorsement, not as a matter of statutory interpretation involving La.R.S. 45:173 and La.R.S. 45:174 alone.

*Genuine Issues of Material Fact*

Notwithstanding the cancellation issue addressed above, New Hampshire also points out that key facts regarding coverage are disputed. Significantly, the policy under which the movers claim coverage, policy number 416-28-390, is not contained in the record.[4] Further, there is a dispute concerning whether Jackie Hampton, the driver of the Mercury Marquis, was employed by Cenla Courier, New Hampshire's insured, at the time of the accident. Patrick, the owner of both Cenla Courier and Cenla Dispatch, made conflicting statements in regard to which company employed

---

[3] In *Wolcott*, 774 So.2d at 1060, the second circuit explained that: "Form E is a document required to be filed, *inter alia*, with the Interstate Commerce Commission ("ICC") and the LPSC." The second circuit set forth the contents of the Form E in that case, which provided:

> This certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the office of the Commission.

*Id.*

[4] Another policy, bearing the number 419-09-298, was filed into the record earlier in the proceedings. We do not substitute the language of that policy for the policy at issue.

Hampton when the accident occurred. In his exception of no cause of action, Patrick asserted that "he did not employ Jackie D. Hampton, Jr. at the time of the accident and thus is not responsible for the alleged negligent action of Jackie D. Hampton Jr." However, he also stated in an affidavit that Jackie "at the time of that accident . . . had started working under our fleet company then with the Cenla Dispatch Company," which was insured by Progressive, not New Hampshire. Additionally, Patrick's joint motion for summary judgment states that "Jackie D. Hampton, Jr. was allegedly within his course and scope of employment by Cenla Taxi and Courier Service, Inc." Because New Hampshire's involvement in the case as a potential insurer necessarily depends on whether the driver was New Hampshire's insured, a genuine issue of material fact exists, precluding summary judgment.

Another issue regards whether the car involved in the accident was covered under the policy. It is undisputed that the 1997 Mercury Grand Marquis was not listed on the New Hampshire policy declaration sheet as a covered automobile. The movers, though, argue coverage is afforded due to the policy provision that includes "temporary substitute autos.[5]"

---

[5] As noted, policy number 416-28-390 is not contained in the record. For discussion purposes only, we note that as per a letter from York Claims Service, Inc., the authorized representative of New Hampshire, wherein coverage for this accident was declined, the policy provision reads in pertinent part:

C.    CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

. . . .

3.    Any "**auto**" you do not own while used with the permission of its owner as a temporary substitute for a covered "**auto**" you own that is out of service because of its:

a. Breakdown;
b. Repair:
c. Servicing;
d. "**Loss**"; or
e. Destruction.

While the policy was not filed into the record, it appears that coverage as claimed by the movers will require proof that a "temporary substitute automobile," is one that "you do not own." Although the movers contend that the "Mercury Marquis . . . was a temporary replacement used by Cenla Taxi and Courier Service, Inc. for a Ford Van previously damaged in another accident" and, thus, is covered as a temporary substitute vehicle, competing evidence exists as to who is the owner of the Mercury. Pointing to the affidavit of Bobby Patrick, the movers urge that the Mercury qualified under the temporary substitute provision, while New Hampshire contends that the insured, Cenla Taxi, owned the Mercury, and the provision affording coverage is only triggered if the insured does not own the vehicle. The absence of the policy from the record, as well as the disputed issue of coverage, create genuine issues of material fact.

Consequently, we find that, in addition to the failure of the movers' statutory claim as to notice of cancellation, multiple, genuine issues of material fact exist and preclude summary judgment. We reverse and remand for further proceedings.

## DECREE

For the foregoing reasons, the summary judgment entered by the trial court is reversed. This matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the appellees, Wade Phillips and Mary Beth Phillips, individually and on behalf of Justin Phillips, James Thomasee, the Jim Thomasee Insurance Agency, and Bobbie Adrian Patrick.

**REVERSED AND REMANDED.**