# IN THE SUPREME COURT OF TEXAS

══════════════
No. 11-0438
══════════════

JOSE L. ELIZONDO AND GUILLERMINA ELIZONDO, PETITIONERS,

v.

RONALD D. KRIST, THE KRIST LAW FIRM, P.C.,
KEVIN D. KRIST, AND WILLIAM T. WELLS, RESPONDENTS

══════════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════════════

JUSTICE BOYD, joined by JUSTICE LEHRMANN, dissenting.

To prove the existence of legal malpractice damages, clients who sue their attorneys must establish that "the result obtained for the client" was less (or lower or worse) than "the result that would have been obtained with competent counsel." *See ante* at __. The Court holds that Jose and Guillermina Elizondo failed to submit any evidence that could meet that burden, despite their expert's testimony that, in his opinion, the attorneys' breaches of their duties caused the Elizondos to settle their claims "basically for nuisance value," and "a reasonably competent plaintiff's lawyer . . . would have garnered far in excess" of that amount. I believe the Court imposes too strict a standard at this summary judgment stage. Because the expert based his opinion on facts that could support a finding that the Elizondos' claims had substantial merit but were settled as if they had no merit at all, I would hold that the Elizondos created a fact issue on the existence of malpractice damages. I therefore respectfully dissent.

# I.
## Standard of Review

This is an appeal from a summary judgment. We must consider the evidence in the light most favorable to the Elizondos, indulging every reasonable inference and resolving any doubts in their favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Shah v. Moss*, 67 S.W.3d 836, 844 (Tex. 2001). The trial court found that the Elizondos submitted no evidence that they incurred any damages as a result of the defendants' alleged breaches. At this stage of the case, the Elizondos did not have to prove the amount of their damages; they only had to create a fact issue as to the existence of damages—that is, whether they sustained any damages at all. To do this, they had to "produce some evidence from which a reasonable jury could infer" that they sustained some damages. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) (observing that even though there was no evidence of amount of damages, there was evidence that some damages were incurred); *see also Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (noting that plaintiff must "produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged") (citing *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995)). If they have done this, we must reverse the trial court's summary judgment.

# II.
## A Qualified Expert Witness

The Elizondos relied primarily on the affidavit of their expert witness, Arturo J. Gonzalez. According to his affidavit, Gonzalez is a Texas lawyer who has specialized in personal injury claims for over twenty years. Following a 2005 explosion at BP Amoco Chemical Company's plant in Texas City, Gonzalez assisted in the representation of over 525 plaintiffs who, like the Elizondos,

asserted claims for damages against BP. For most of that time, Gonzalez served as the plaintiffs' court-appointed liaison counsel to facilitate discovery and the exchange of information between the parties. He "was intimately involved on a day to day basis with the settlement process" involving these claims, and participated in numerous settlement conferences with BP's representatives and attorneys. He was "directly responsible" for negotiating and settling three cases, and has personal knowledge of the values for which most of the other claims were settled. The defendants may ultimately dispute Gonzalez's assertions and qualifications and, at trial, would be free to disprove them or otherwise undermine his credibility or the reliability of his opinions. But for purposes of summary judgment, as the Court acknowledges, Gonzalez's affidavit establishes that he is "an experienced attorney whose credentials are not the problem."[1] *Ante* at ___.

### III.
### An Acceptable Method of Proof

We have previously held that a client who was the plaintiff in an underlying case can establish the existence of malpractice damages by proving that the amount the client recovered was less than the amount "that would have been recoverable and collectible if the other case had been properly prosecuted." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). Because we have focused on the recoverable and collectible amount of a judgment following trial, courts often refer to this method of proving damages as a "suit-

---

[1] The Court holds that expert testimony is necessary to establish the existence of damages under the comparison-of-settlements method that it approves today, because the balancing and evaluation of factors necessary to compare different claims and their settlement values is "beyond the ken of most jurors." *Ante* at ___ (quoting *Alexander*, 146 S.W.3d at 119–20). Because I would hold that Gonzalez's affidavit was sufficient, under a different method, to create a fact issue and defeat summary judgment, I need not decide in this case whether expert testimony would be necessary in all such cases.

within-a-suit." *See, e.g.*, *Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 183 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("This causation burden in this type of legal malpractice claim has been called the 'suit-within-a-suit' requirement.") (citing *Greathouse v. McConnell*, 982 S.W.2d 165, 173 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).

Today, the Court holds that a client who was a plaintiff "in a mass tort litigation involving thousands of similar claimants and arising out of the same event" can also establish the existence of malpractice damages by proving that the amount the client received in settlement is lower than the amounts of "the settlements obtained in other cases . . . arising from the event." *Ante* at ___. This holding is consistent with the Court's comments in *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (noting that the expert "might have . . . compared these settlements to those of similar claims"), and I agree with it. I also agree with the Court's holding that Gonzalez's affidavit was insufficient under this "comparison-of-settlements" method. Gonzalez "did not undertake to compare the Elizondo settlement with other actual settlements obtained in the BP litigation." *Ante* at ___. He did not state the values for which any of the other cases settled, and he did not assert that the Elizondos' claims were comparable to, but settled for less than, any of the other cases.[2]

But the Elizondos did not rely on the comparison-of-settlements method. Instead, they challenged the defendants' "faulty premise" that the "only way of proving damages is by showing that someone else with identical injuries and claims received a larger settlement." *See ante* at ___.

_____

[2] As the Court notes, Gonzalez did not use the "comparison-of-settlements" method because confidentiality agreements prevented him from disclosing the amounts for which the other cases settled. I agree with the Court that, to the extent the Elizondos are now arguing that the attorney defendants thwarted their efforts to compare the values of other settlements, they waived that argument in the court of appeals and in the trial court. *Ante* at ___.

4

I agree with the Elizondos that the suit-within-a-suit and the comparison-of-settlements methods are not the *only* ways to prove the existence of legal malpractice damages. Just as our decisions "do not require that damages can only be measured against the result the client would have obtained if the case had been tried in court to a final judgment," a*nte* at __, they also do not require that damages can only be measured against the result the client would have obtained if the case had settled for the amounts for which similar cases settled. Since malpractice damages are "the difference between the result obtained and the case's 'true value,'" *see ante* at ___, I would hold that any method that provides competent evidence that the case's "true value" was greater than the "results obtained" will suffice to raise a fact issue on the existence of malpractice damages. And I would hold that, by submitting sufficient expert opinion evidence that their claims had merit but were settled as if they had none, the Elizondos satisfied that burden.

## IV.
## Sufficient Expert Opinions

Gonzalez did not utilize the comparison-of-settlements method because confidentiality agreements prohibited him from disclosing the amounts for which other cases settled. Nor did he utilize the suit-within-a-suit method, presumably because BP settled every one of the 2005 explosion claims prior to the entry of any judgment. Instead, after stating his experience and qualifications, explaining the confidentiality of BP's settlement amounts, listing the factors that BP considered when determining the settlement value of a case, stating his opinion of the general settlement value of the Elizondos' claims, listing the sources on which he relied, describing the things that a reasonably diligent attorney would have done to pursue the Elizondos' claims, and listing the specific

5

ways in which the attorney defendants failed to meet that standard, Gonzalez stated his opinions as follows:

> The settlement offer made by BP for the Elizondos' claim *was basically for nuisance value*. Given the extraordinary circumstances surrounding the BP explosions claims, a reasonably competent plaintiff's lawyer should have continued to prosecute the claim *until a fair and reasonable offer was made* by BP. In my opinion, had that been done, the Lawyers would have garnered far in excess of the $50,000 offer[.]

(Emphasis added.) In Gonzalez's opinion, the $50,000 that the Elizondos received to settle their claim was "basically for nuisance value" and not a "fair and reasonable" amount based on the merits of the claim.

Although Gonzalez did not define "nuisance value," its meaning is common knowledge, at least among American litigators and judges: a nuisance value settlement is a settlement of meritless, frivolous, or groundless claims for an amount that is less than the defendant would have to spend to defeat them. *See, e.g.*, *Valores Corp. v. McLane Co.*, 945 S.W.2d 160, 169 (Tex. App.—San Antonio 1997, writ denied) (noting that summary judgment rule was intended to dispose of "groundless actions instituted by plaintiffs seeking to harass defendants into nuisance value settlements") (quoting Roy W. McDonald, *Summary Judgment*, TEX. L. REV. 286, 286 (1952)); *Wolcott v. Trailways Lines, Inc.*, 774 So. 2d 1054, 1055 n.1 (2nd Cir. 2000) ("The 'nuisance value' of a claim is generally considered to be the cost of defending a claim in which it is doubtful the plaintiff will prevail, but is unwilling to simply dismiss."); *Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir. 1998) ("[a] compromise for less than the cost of defense is a good working definition of a nuisance-value settlement"); R. Kozel & D. Rosenberg, *Solving the Nuisance-Value Settlement Problem: Mandatory Summary Judgment*, 90 VA. L. REV. 1849, 1851 (2004) (defining

6

a nuisance-value settlement as "a payoff extracted by a threat to litigate a meritless claim or defense that both parties know the court would readily dismiss as 'untriable' or otherwise legally untenable on an applicable dispositive motion for merits review").[3]

Reading Gonzalez's affidavit in the light most favorable to the Elizondos, and indulging every reasonable inference in their favor, it is Gonzalez's opinion that the Elizondos were paid as if their claims had no merit, when in fact they had substantial merit. If, in fact, the Elizondos' claims had substantial merit but were settled as if they had no merit, a reasonable jury could at least infer that the Elizondos sustained damages of some amount. Although Gonzalez's opinions could not establish any particular amount of damages, in my view they are sufficient to create a fact issue on the existence of damages.

---

[3] *See also Fed. Land Bank of Hous. v. Brooks*, 124 S.W.2d 161, 167 (Tex. Civ. App.—Beaumont 1938) (Combs, J., dissenting) (expressing concern that majority's holding would "give to many an unfounded and unjust claim, 'a nuisance value' which may encourage such claims being asserted merely in the hope of a settlement"), *rev'd,* 135 Tex. 370, 143 S.W.2d 928 (Tex. Comm'n App. 1940); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (characterizing suits brought to "realize upon their nuisance value" as suits "brought not to address real wrongs"); *Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 257 F.3d 484, 495 n.6 (6th Cir. 2001) (explaining that suit's "nuisance value" is "based on the prospective litigation costs required to effect a dismissal of the action"); *Travelers Ins. Co. v. Motorists Mut. Ins. Co.*, 178 N.E.2d 613, 619 (Ct. App. Ohio, 1961) ("The fact that insurers agree to defend groundless claims, otherwise within the coverage of their policies, is a recognition that even groundless claims have a nuisance value subject to defense and settlement."); Robert A. Sachs, *Product Liability Reform and Seller Liability: A Proposal for Change*, 55 BAYLOR L. REV. 1031, 1040 n.25 (2003) (noting that parties "pay 'nuisance value' to avoid continuing with the defense of a frivolous claim"); Geoffrey P. Miller, *Payment of Expenses in Securities Class Actions: Ethical Dilemmas, Class Counsel, and Congressional Intent*, 22 REV. LITIG. 557, 592 (2003) (characterizing strike suits and "nuisance value" suits as "litigation without substantial merit"); Cym H. Lowell & Jack P. Governale, U.S. INT'L TAX: PRAC. & PROC. ¶ 6.02 (2012) (noting that, under 26 C.F.R § 601.106(f)(2), the IRS will not settle based on "nuisance value," described as"any concession made solely to eliminate the inconvenience or cost of further negotiations or litigation and is unrelated to the merits of the issues").

## V.
## An Adequate Factual Basis

Gonzalez's opinions, however, are not enough. Absent an adequate factual basis, an expert's bare opinion that a claim had merit or that it was settled for nuisance value would be conclusory and, therefore, incapable of creating a fact issue to avoid summary judgment. Gonzalez cannot just expect us to "take his word" for it, *see ante* at ___; he must provide facts to support his opinions. *See, e.g.*, *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) ("We have rejected expert opinions not grounded in a sound evidentiary basis: '[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection.'" (citation omitted)); *see also Elizondo v. Krist*, 338 S.W.3d 17, 25–28 (Tex. App.—Houston [14th Dist.] 2010) (Christopher, J., dissenting) (discussing Gonzalez affidavit). In my view, Gonzalez's affidavit recites numerous facts that, taken in the light most favorable to the Elizondos, constitute evidence that the Elizondos' claims had merit but were settled for nuisance value, as if they did not.

### A.    Facts supporting merit

Gonzalez provided an extensive recitation of facts supporting his conclusion that the Elizondos' claims had merit. First, he listed ten "criteria or factors" that BP "focused on" when determining the value of claims arising out of the 2005 explosion:

- proximity to ground zero of the explosion;

- when injury was reported to a supervisor;

- corroboration of proximity and reporting of injuries to supervisor or management;

8

- age of the victim;

- wage earning capacity and wage loss (present and future);

- injuries and biomechanics of injuries—e.g., nature, extent, and duration;

- medical treatment received and duration of (physical and mental/PTSD);

- surgical vs. nonsurgical intervention(s);

- single or married/residual consortium claims; and

- onsite vs. offsite claims.

He then listed the facts of the Elizondos' claims that were relevant to these factors:

- On the date of the explosion, Jose was working for a subcontractor at the BP facility. He was 37 years old.

- Jose was approximately 200 to 300 feet from the blowdown stack when the explosion occurred. The force of the explosion blew him a number of feet into a port-a-potty.

- Jose was near Mr. Eamello at the time of the blast.

- Jose sustained injuries to his neck and lower back and suffered such mental anguish and emotional distress that he was considered to have post-traumatic stress disorder.

- Jose was first treated for his neck and back injuries by Dr. Ron Kirkwood and Dr. English of Kirkwood Medical Associates, on March 26, 2005.

- Jose saw Dr. David Winberly at Fondren Orthopedic on April 1, 2005, for complaints of neck and lower back pain, and had a follow-up visit on June 7, 2005 for persistent neck and back pain.

- Jose received physical therapy at TIRR twelve times over the six-

week period between April 7 and May 19, 2005.

- Jose was first treated for mental anguish or emotional distress by Dr. Susana Rosin on May 6, 2005. He attended additional therapy sessions on May 20, July 6, and August 3, 2005. His treatment lasted approximately three months.

- Jose is married to Guillermina Elizondo, and they had four children at the time of the explosion. They now have five children.

- Jose earned about $23 per hour at the time of the explosion, and worked about 50 to 60 hours each week.

- Jose missed work as a result of the explosion.

- Jose has not been physically or medically restricted from working, but he was injured in the explosion.

Based on these facts and the "criteria and protocol relied upon to establish general settlement values in the BP litigation," Gonzalez opined that the Elizondo case "would have had a general value, by way of settlement or verdict, in the range of between Two Million . . . and Three Million . . . dollars," and he later summarized his view by opining that the claims were worth "far in excess" of the $50,000 that BP paid. Whether the facts that Gonzalez recited were sufficient to support his $2–3 million valuation is doubtful (at best), but, in my view, they constitute some evidence that the Elizondos' claims had merit.

**B.      Facts supporting nuisance value**

Next, Gonzalez recited facts to support his view that the claims were settled "basically for nuisance value," as if they had no merit. First, he described in some detail what a "plaintiff's attorney using reasonable due diligence" would have done to establish the claims' merit. Specifically, a reasonably diligent attorney would have:

10

taken steps that included prosecuting the case to its fullest extent including investigation, prosecution and filing of a lawsuit . . . , the taking of depositions or sworn statements of important witnesses, requesting or obtaining and reviewing liability documents, coordinating efforts to develop liability and damages in this matter, interviewing other potential fact witnesses that can determine the extent and location of the injuries sustained by their client, determining any and all responsible parties, determining all claims that their clients could respectfully (sic) have . . . , and addressing and developing facts and issues relevant to establishing the egregious conduct of BP.

He then described specifically how the attorneys failed to do these things: they did not file a lawsuit; conduct any investigation into the liability and damages facts; send out any discovery requests; take any depositions; investigate and develop evidence of gross negligence; or investigate and determine how BP valued the explosion claims. Instead, Gonzalez asserted, the attorneys "perform[ed] no work other than to review a demand package prepared by a referring lawyer."

These facts, if true, would certainly support the duty and breach elements of the Elizondos' malpractice claims. But in my view, they also support Gonzalez's opinion that the claims were settled for nuisance value, as if they had no merit. If, in fact, the attorney defendants did nothing to develop the claims and establish their merit, a reasonable jury could infer that the amount BP paid reflected the cost of defense and the claims' lack of merit, and that the amount was lower than BP would have paid for a meritorious claim. Again, although this cannot constitute evidence of any particular amount of damages, in my view it does constitute evidence of the existence of damages.

## VI.
### Distinguishing *Burrow v. Arce*

In rejecting Gonzalez's affidavit, the court of appeals relied heavily on our decision in *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1997), as does this Court. In *Burrow*, the defendants' expert

11

testified by affidavit that he had considered the relevant factors (including the underlying facts, the identity of the defendant, the elements of damages available, and the losses each plaintiff incurred) and concluded based on these factors that each plaintiff was "reasonably and fairly compensated." *Id.* at 235. The Court held that this affidavit was conclusory because the expert "[did] not explain why the settlements were fair and reasonable." *Id.* at 235–36. To do this, the Court explained, he "might have analyzed the Clients' injuries by type, or related settlement amounts to medical reports and expenses, or compared the settlements to those of similar claims, or provided other information showing a relationship between the plaintiffs' circumstances and the amounts received." *Id.* at 236.

In the present case, the Court concludes that Gonzalez's affidavit is "similarly conclusory" because it "fails to offer specifics on why the value of the case was $2–3 million as opposed to the $50,000 received in settlement." *Ante* at __. But to avoid summary judgment, Gonzalez did not have to establish that the case was worth $2–3 million as opposed to $50,000; he only had to establish that the case was worth more than $50,000. By providing specifics on why $50,000 reflects the value of a case that had "basically" no merit, and specifics on why the Elizondos' case had merit, I would hold that he has done that.

*Burrow* is distinguishable from this case in all material aspects. In *Burrow*, the defendants sought and obtained a traditional summary judgment—they had the burden to prove the absence of damages as a matter of law. 997 S.W.2d at 234. Here, the Elizondos are defending against a no-evidence summary judgment—they need only raise a question of fact on the existence of damages. More importantly, the expert in *Burrow* provided no facts to support his opinion that the "fair and reasonable" amounts the plaintiffs received were equal to or greater than their true value. Here, by

12

contrast, Gonzalez provided extensive facts to support his conclusion that the Elizondos' settlement was "basically for nuisance value," meaning it did not reflect any merit at all. Because a reasonable jury can infer that a claim that lacks merit is worth less than a claim that has merit, I would hold that Gonzalez's testimony was sufficient to defeat summary judgment, and that *Burrow* does not counsel otherwise.

## VII.
## Conclusion

In response to the attorney defendants' motions for summary judgment, the Elizondos' expert testified that, in his opinion, their claims had merit but were settled as if they had no merit, and he did so in an affidavit in which he identified numerous facts that support each of these two propositions. Because I would hold that the expert's affidavit constitutes competent evidence from which a reasonable jury could infer the existence of damages, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** August 30, 2013

13