**Gary BLAKE, Appellant,**

v.

**Craig LEWIS and Fisher, Gallagher, Perrin & Lewis, Appellees.**

**No. 01–91–01372–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 8, 1994.

James A. Gieseke, Houston, for appellant.

Charles B. Holm, Charles L. Cotton, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION ON REMAND FROM THE TEXAS SUPREME COURT

O'CONNOR, Justice.

This case is on remand from the Texas Supreme Court. In our original opinion, *Blake v. Lewis*, 866 S.W.2d 687 (Tex.App.—Houston [1st Dist.] 1993), we reversed, holding the trial court erred in not granting a continuance because Blake did not get the required 21–day notice of the summary judgment hearing. The Supreme Court reversed, finding that Blake received timely notice. *Lewis v. Blake*, 876 S.W.2d 314 (Tex.1994). We address the merits of Blake's remaining point of error and affirm.

Gary Blake retained Craig Lewis and the law firm of Fisher, Gallagher, Perrin & Lewis (collectively, the firm) in August of 1987, to represent him in a medical malpractice and products liability action against a treating doctor, the medical group employing the doctor, the group's doctor-owner, and a pharmaceutical company. The firm filed a lawsuit for Blake against the treating doctor and the pharmaceutical company. Four months after being retained by Blake, in December of 1987, the firm withdrew from the case. After the firm withdrew, Blake was represented by other lawyers in the medical malpractice suit. Ultimately, a summary judgment was granted for the defendants in that case, against Blake. Blake appealed, but the summary judgment was affirmed.

After the unsuccessful appeal of the medical malpractice suit, Blake filed this suit against the firm. In his petition, Blake characterized the firm's withdrawal as "mysterious"; he alleged the firm's withdrawal caused the summary judgment; and he alleged he was incompetent, incapacitated, and unable to retain competent counsel.

In his suit against the firm, Blake set out five causes of action, all arising from his inability to successfully pursue his medical malpractice claim after the firm withdrew. All of his claims relate to his failure to recover in the medical malpractice case. First, Blake alleged the firm was negligent in agreeing to represent him when it had a conflict of interest; in failing to advise him of a conflict of interest; and the firm's negligence barred his claims against the doctors, the medical group, and the pharmaceutical company. Second, Blake alleged the firm breached an implied warranty that services would be performed in a skillful and workmanlike manner because the firm did not disclose the conflict of interest, nor did it diligently prosecute the lawsuit. Third, Blake claimed the firm breached a fiduciary duty by failing to disclose a conflict of interest. Fourth, Blake alleged the firm violated the DTPA when it "represented that the goods and services they provided had sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which it did not have." Fifth, Blake alleged the firm committed fraud because it accepted his case knowing of the conflict of interest and intentionally misled him by stating that the doctor owner and medical group would be vicarious-

ly liable if a jury award exceeded the individual doctor's insurance coverage. Central to all of Blake's claims is that the summary judgment in the medical malpractice case was taken against him because the firm "mysteriously withdrew leaving Plaintiff the impossible task of finding other competent counsel."

In the firm's motion for summary judgment, the firm asked for summary judgment on the following grounds: the firm's withdrawal was proper; the withdrawal did not prevent Blake from hiring other counsel; the firm was not negligent; the firm's withdrawal did not cause the loss of the medical malpractice action; and Blake's claims were barred by res judicata and collateral estoppel.

In response to the motion, Blake filed a motion for continuance but did not file a response to the summary judgment motion. The trial court denied the motion for continuance and granted the summary judgment. The trial court's order did not specify the particular grounds for granting the firm's summary judgment. In such a case, we will affirm the summary judgment if any ground asserted by the movant is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### A.

### Fact Issues

In part B of point of error two, Blake contends the trial court erred in granting the motion for summary judgment because fact issues precluded it.[1]

The trial court may not grant a summary judgment by default for lack of a response by the nonmovant when the movant's summary judgment proof is legally insufficient. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The nonmovant who does not respond to the summary judgment motion may still contend on appeal that the grounds expressly presented by the motion are insufficient as a matter of law to support the summary judg-

ment, but it may not raise any other issues as grounds for reversal. *Id.*

The standard of review of a summary judgment for a defendant is whether the summary judgment proof "shows that ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or other response." TEX.R.CIV.P. 166a(c). The movant has the burden to make this proof. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A proper summary judgment for the defendant requires the defendant to disprove as a matter of law at least one essential element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

### 1.

### The Firm's Withdrawal

In its motion for summary judgment, the firm alleged it withdrew from representing Blake for two reasons: (1) upon reviewing Blake's medical records, Lewis discovered Blake had made repeated calls to the treating doctor to attempt to influence his diagnosis, by veiled threats and other means; second, the medical records did not connect the drug to Blake's medical condition. When the firm withdrew in 1987, Lewis sent Blake a four-page letter explaining in detail how the notations in the medical records, whether true or not, would interfere with the successful prosecution of the suit.

Blake responded in writing to Lewis' letter, and agreed that the firm should withdraw. Blake's letter made certain demands on the firm regarding the motion to withdraw. Below we reproduce six of them:

The district attorney's officials have indicated to me the following CONTENTS need to be included in your MOTION TO WITHDRAW if *you* hope to avoid any and every civil and criminal action which could be brought against YOU.

---

1. In part A of point of error one, Blake argued that he had less notice than required by TEX. R.CIV.P. 166b(c). That issue was resolved by the Supreme Court's opinion and we need not revisit it.

I SINcerely hope that it will not become necessary to follow through with the instructions, advice, and guidance the district attorney has kindly provided me in order to assure that MY MY MY MY CASE is not negatively affected, and to assure the substitution of attorneys without prejudiced.

The contents of your motion to withdraw must include the following:

1. The ongoing investigation our firm has pursued on the behalf of our client, Gary Blake, has made it recently evidence that co-defendant Johnstone did not merely make honest mistakes and committed mere negligence as originally stated in our petition filed with the court. But, rather the evidence will prove that Johnstone committed felonious and CRIMINAL ACTS in addition to what would be considered gross (criminal) negligence.

We have concluded that our clients interests and justice would better be served through substitution a highly experienced criminal attorney to continue with this lawsuit.

\* \* \* \* \* \*

3. Finally, we will withdraw as attorney's for Gary Blake due to the seriousness of an irreparable mistake we made with regard to not taking notice and not heeding the numerous written and oral warnings and concern expressed by Mr. Blake pertaining to the treating physician we recommended and who was KNOWN TO DEF JOHNSTONE. It is evidence now, and too late, we should have immediately instructed our client to find a neurologist who for certain would be UNKNOWN to def. JOHNSTONE AND HIS BLATANTLY CONCEIVABLE ATTEMPTS TO INFLUENCE AND PERSUADE ANY KNOWN AND TREATING PHYSICIAN IN LIGHT OF THE CRIMINAL NATURE OF HIS ACTS, ERRORS, AND OMISSIONS WITH REGARD TO OUR CLIENT, Gary Blake. Originally, our client felt it was necessary to go to another city, Austin, Tx., in order to be assured the medical specialist would be UNKNOWN TO DEF. JOHNSTONE, and Dr. Claghorn's attempts to contact any

and every known treating physician in order to influence and persuade their cover-up attempt.

The letter contained four other paragraphs with similar threats and demands. Lewis' letter to Blake and Blake's response were filed as part of the summary judgment motion.

Blake's allegation in his petition against the firm is that it withdrew under "mysterious" circumstances and the withdrawal prejudiced his right to a fair trial of the medical malpractice lawsuit.

We hold the firm carried its burden to show there was no genuine issue as to any material fact and it was entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). *Nixon*, 690 S.W.2d at 548. The firm disproved Blake's allegation that it withdrew under mysterious circumstances; the firm proved that its withdrawal was justified. To be entitled to summary judgment, a defendant must disprove as a matter of law at least one essential element of each of the plaintiff's causes of action. *Lear Siegler, Inc.*, 819 S.W.2d at 471. Here, the allegation that the withdrawal was somehow improper was disproved as a matter of law.

It is clear from the summary judgment evidence that the firm felt it could not successfully prosecute a lawsuit on behalf of Blake because he had attempted to interfere with the medical diagnosis, and the medical records showed that the medication did not connect the drug to Blake's medical condition.

### 2.

### Effect of the Firm's Withdrawal

In its motion for summary judgment, the firm stated that Blake hired three attorneys after it withdrew from his case: Jack Rawitscher, Stephen Fox, and Rand Mintzer. The firm attached three documents to its motion for summary judgment: (1) a copy of a January 20, 1989, letter from Rand Mintzer to the district clerk asking that he be substituted as attorney of record for Blake in cause no. 87–38190, *Blake vs. Dr. Edwin E. Johnstone, et al.* Attached to the letter is a copy

of the motion with the district clerk's file stamp of January 20, 1989. (2) A copy of Blake's motion to bar entry of an order in cause no. 87–38190 showing the district clerk's file stamp of November 10, 1988. The motion was signed by Stephen D. Fox, "Attorney for Plaintiff Gary Blake." (3) A copy of the affidavit of Jack Rawitscher, dated June 21, 1991.

Rawitscher's affidavit states in part:

I agreed to represent Gary Blake in an action styled *Gary Blake v. Dr. Edwin E. Johnstone, et al;* Cause Number 87–038190 originally filed in the 163rd Judicial District Court of Harris County, Texas, later transferred to the 127th Judicial District Court of Harris County, Texas upon the conditions stated in the last paragraph of this Affidavit. At the time I agreed to represent Gary Blake in the above-styled and numbered cause, I was aware that he had previously been represented by Mr. Craig Lewis of the firm Fisher, Gallagher, Perrin & Lewis.

. . . .

When I agreed to represent Mr. Gary Blake, I advised him that I would represent him only if I were able to retain a reputable expert who could establish a causal link between Mr. Blake's problems and the drug Merital. I arranged for Mr. Blake to be examined and evaluated by Eric Comstock, M.D. and was advised by Dr. Comstock that he could not establish the required causal link. Per the understanding I had with Gary Blake, I terminated the relationship between myself and Mr. Gary Blake.

Rawitscher's uncontroverted affidavit establishes that Blake was able to obtain another attorney to represent him after the withdrawal of the firm.[2] It also establishes that Rawitscher withdrew his representation for reasons unrelated to the withdrawal of the firm. Further, there is no statement by Rawitscher that he had insufficient time, and or opportunity, to pursue Blake's claims, only that he couldn not prove Blake's allegations.

Blake argues that this affidavit does not support the summary judgment because Rawitscher chose to withdraw from the case after investigating the facts about Blake's medical claim. That Rawitscher chose to withdraw after he had agreed to represent Blake does not assist Blake's challenge to the summary judgment. Rawitscher took the case with only one reservation—that he could find an expert who would establish a causal link.

■ Because no evidence connects Rawitscher's withdrawal from the medical malpractice lawsuit to the firm, Rawitscher's withdrawal breaks the chain of causation between the firm and Blake's adverse judgment in that case. Blake's theory of recovery rests upon his inability to find other counsel to pursue his original malpractice claim because of his association with the firm. Blake's inability to secure new counsel is not evidence of causation linking the firm's alleged tortious acts with Blake's alleged damages. If a competent attorney agreed to represent Blake, and he was not hampered in his representation by anything the firm did, or did not do, then the firm did not cause the harm suffered by Blake.

### 3.

### Other Complaints

Under part B of point of error two, Blake makes other complaints which we overrule for failure to brief and argue. In his brief, Blake dedicated one short paragraph each to the issues of his incompetence and to other causes of actions. Tex.R.Civ.P. 74(f); *Olson v. Texas Commerce Bank,* 715 S.W.2d 764, 768 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

We overrule part B of point of error two.

### B.

### Motion for Continuance

In point of error one, Blake asserts the trial court erred in denying his motion for continuance because he required additional time to do discovery.

2. The firm states Blake retained Rawitscher in February or March 1988.

The hearing on the motion for summary judgment was set for July 15, 1991. On July 8, 1991, Blake moved for a continuance of the summary judgment hearing. The trial court denied the motion for continuance at the same time it granted the motion for summary judgment.

 The granting or denial of a motion for continuance is within the trial court's sound discretion, and will not be disturbed except for clear abuse. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986).

Blake's case against the firm was set for trial on August 19, 1991. The summary judgment hearing was scheduled 34 days before the trial setting. Even though the hearing on the summary judgment was scheduled just over a month before the trial setting, Blake had not completed discovery. The firm sent Blake interrogatories and requests for production, with responses due by May 27, 1991. After Blake did not respond timely, the court imposed sanctions and ordered Blake to comply with the firm's discovery requests by July 16, 1991. Nothing in the record indicates whether he complied. There is no indication in the record that Blake sought to depose anyone, or take additional discovery after the motion for summary judgment was filed on June 21, 1991.

▪ Blake's allegations in his motion for continuance were stated in general terms, without any specifics. He stated he had been unable review and respond to the motion for summary judgment; he had been unable to obtain affidavits from expert (unnamed) witnesses; and he needed additional time to depose "certain (unspecified) attorneys of the lawfirm" before he could prepare a response. General allegations that the attorney has personal matters, other cases, and insufficient time to prepare for the summary judgment hearing are not enough. *Cronen v. Nix*, 611 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Blake should have stated that the affidavits and the deposition were material, and shown why they were material. *Rhima v. White*, 829 S.W.2d 909, 912 (Tex.App.—Fort Worth 1992, writ denied).

▪ Nothing in his motion or the record indicates that Blake made diligent efforts to secure discovery. *Id.* Nothing in the motion explains why Blake had been unable to obtain discovery earlier. *Id.* The failure of a litigant to diligently pursue discovery will not authorize the granting of a continuance. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988). Because Blake did not show a clear abuse of discretion, it was not error for the trial court to deny the continuance.

We overrule point of error one and affirm the judgment of the trial court.