**Opinion issued August 30, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-11-00078-CV**

————————————

**ROBERT B. TAYLOR, Appellant**

**V.**

**ALONSO, CERSONSKY & GARCIA, P.C., JAMES A. CERSONSKY,
JOHN CAUSEY, AND HOPE AND CAUSEY, P.C., Appellees**

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2008-08861**

**O P I N I O N**

In this legal malpractice case, Robert B. Taylor appeals the trial court's

rendition of summary judgment in favor of his former attorneys.  Taylor was sued

in the underlying case for allegedly causing a car accident that left the passenger in the other car in a permanent vegetative state. In the car accident case, Taylor initially was represented by James A. Cersonsky and Alonso, Cersonsky & Garcia, P.C. (Cersonsky). After Cersonsky withdrew from the representation, John Causey and Hope and Causey, P.C. (Causey) took over Taylor's representation.

Taylor ultimately paid $3 million in personal funds over his $250,000 policy limit to settle the car accident suit. He then brought this suit against Cersonsky and Causey, asserting claims for legal malpractice, gross negligence, and breach of fiduciary duty. Cersonsky and Causey each moved for summary judgment. The trial court granted the motions and rendered a take-nothing judgment. Taylor appeals, arguing that the trial court erred in granting summary judgment because he raised fact issues as to each of the essential elements of his claims. We conclude that the trial court correctly granted summary judgment and, accordingly, we affirm.

## Background

### The accident

In July 2005, Taylor, then seventy-eight years old, was involved in a head-on collision on a two-lane road in Chambers County. Russell Fullen, a passenger in the other car, suffered a severe brain injury and, as a result, fell into a permanent vegetative state. Fullen, who was twenty-one years old at the time of the accident,

will require round-the-clock medical care for the rest of his life. It is estimated that the cost of his medical care will approach $20 million.

The accident report completed by the Chambers County Sheriff's Office indicated that Taylor and Leach, the driver of the car in which Fullen rode, were driving in opposite directions. Taylor attempted to turn left in front of Leach, who swerved to his left to avoid Taylor. Taylor then swerved back into his lane of traffic, striking Leach. The report concluded: "[Taylor] drove on the wrong side- not passing, and [Leach] may have taken a faulty evasive action." Taylor ultimately was charged with a moving violation in connection with the accident.

Taylor's insurer, Allstate Insurance Company, retained The ProNet Group to investigate the accident. ProNet's January 2006 accident reconstruction report noted that Taylor claimed Leach caused the accident by driving erratically and swerving into Taylor's lane of traffic. Nevertheless, the report concluded that the evidence, some of which was not conclusive, suggested that the accident did not occur as Taylor had described. Rather, ProNet concluded that it was more likely that the accident occurred as described in the police report. In February 2006, Allstate informed Taylor that his potential liability exceeded his policy limits.

**Fullen's suit against Taylor**

In February 2006, Fullen, through his family, sued Taylor. Allstate retained Cersonsky to defend Taylor in the suit. Cersonsky communicated with Taylor and

3

Richard Baker, Taylor's personal attorney, during Cersonsky's representation of Taylor. One of Taylor's main objectives in the litigation was to prevent disclosure of his personal financial information. To that end, Taylor, Baker, and Cersonsky decided to file a special exception and motion for protection to prevent disclosure of that information, which the Fullen family had requested in discovery. The trial court ruled against Taylor on the motion for protection and ordered the financial information produced. Taylor decided to appeal the decision. Cersonsky, who does not handle appeals, told Allstate to transfer the matter to another attorney. Cersonsky wrote Taylor and informed him that Allstate was assigning the case to Causey, and Cersonsky withdrew. During Cersonsky's five-month representation of Taylor, no scheduling order or trial setting was in place, and no settlement offers or demands were exchanged.

Following Cersonsky's withdrawal in July 2006, Allstate hired Causey to continue the representation of Taylor. While the case ultimately settled eighteen months later, the settlement came after several developments—each unfavorable to Taylor—came to pass:

- First, Fullen amended his petition to assert a fraudulent transfer claim against Taylor, Taylor's family members, Taylor's family trust, and others, after discovering that Taylor, after the accident, had transferred certain significant assets in an apparent effort to avoid exposing his substantial net worth to a potential judgment in Fullen's favor. Fullen

4

also obtained a temporary restraining order and temporary injunction prohibiting the transfer of certain assets until the case was resolved.[1]

- Second, the trial court denied Taylor's motion for summary judgment on Fullen's gross negligence claim, leaving Taylor open to jury consideration of exemplary damages.

- Third, more unfavorable evidence regarding fault came to light. An accident reconstruction expert retained by Causey concluded that Taylor was a cause of the accident. And an eyewitness to the accident testified that the accident was Taylor's fault because he crossed over into the lane of oncoming traffic while attempting to turn left.

It was against this backdrop that the parties mediated the case, nine days before the scheduled trial date in October 2007.[2] At the mediation, Allstate tendered policy limits of $250,000, and Taylor, who was accompanied by Causey and two personal lawyers not retained by Allstate, agreed to pay $3 million to settle all of the claims against Taylor, his family members, and related entities. Taylor signed the written settlement agreement, as did Causey and Taylor's personal attorney, Baker.

**Taylor's suit against Cersonsky and Causey**

In February 2008, Taylor sued Cersonsky, Causey, and Allstate. Taylor alleged that Cersonsky and Causey committed legal malpractice by failing to properly investigate and develop viable defenses to Fullen's suit that could have

---

[1] Causey did not handle this aspect of the litigation; it was handled by Nelson Hensley, another personal attorney of Taylor.

[2] Taylor had made a written $1 million settlement offer through his personal attorney, Hensley, the month before the mediation.

resulted in a verdict in Taylor's favor or significantly reduced the value of Fullen's claims. Although Taylor alleged various acts of malpractice, his primary complaint was that his lawyers, who he claims were beholden to Allstate, failed to investigate and pursue a defense based on the fact that Fullen failed to wear a seat belt on the day of the accident. While Causey pleaded an affirmative defense based on Fullen's failure to wear a seat belt and later designated (after the expert deadline) an expert to opine on whether Fullen would have avoided serious injury had he worn a seat belt, Taylor complains that it was too little, too late.

With respect to the alleged breach of fiduciary duty, Taylor contended that Cersonsky and Causey defended his case so as to further their own interests, and Allstate's interests, rather than Taylor's.[3] He contends that Cersonsky and Causey, each of whom took the case for a flat fee, were motivated to save Allstate from having to pay for an expensive defense, and did not act in Taylor's best interest. For example, he contends that a lawyer truly representing Taylor would have immediately interviewed witnesses and that Cersonsky and Causey did not work up the case soon enough because of the nature of their fee arrangement. Randy

---

[3] Taylor also sued Allstate. He alleged Allstate (1) tortiously interfered with Taylor's relationships with Cersonsky and Causey, (2) breached its contract with Taylor and (3) violated the DTPA and Insurance Code in handling his claim. After the trial court granted Allstate's motion for summary judgment, it severed the claims against Allstate, and Taylor appealed. This court affirmed in part but reversed and remanded Taylor's DTPA and Insurance Code claims against Allstate. *See Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92, 103 (Tex. App.— Houston [1st Dist.] 2011, pet. denied).

Donato, Taylor's legal expert, also asserts that Cersonsky and Causey improperly failed to disclose to Taylor the nature of their fee arrangements with Allstate.

Cersonsky and Causey each filed traditional and no-evidence motions for summary judgment on all of Taylor's claims against them. Both argued that Taylor had no evidence of causation or, in other words, that Taylor could not raise a fact issue on the "suit within a suit" element of his legal malpractice claim. Cersonsky additionally argued that his early withdrawal from the case broke the chain of causation. In response, Taylor offered the affidavits of three experts: a biomechanical engineering expert, John Lenox, who averred that Fullen would not have sustained serious injury if he had been wearing his seat belt on the day of the accident; an accident reconstruction expert, William Greenlees, who performed an accident reconstruction analysis; and Donato, who opined that Cersonsky's and Causey's breaches of the standard of care in their representation of Taylor caused Taylor to suffer damages. Donato concluded: "Both Cersonsky and Causey failed to adequately investigate and prepare the underlying defenses available to them rising out of the accident facts. Had that work been performed properly, in my opinion, the value of the case should have been reduced to within, Allstate's policy limits." In other words, "had either of these lawyers, retained by Allstate Insurance Company complied with the standard of care in timely locating and retaining experts . . . it is more probable than not that a trial would have resulted in

7

a defense verdict and a pretrial settlement would have been accomplished for the available policy limits or less." The trial court granted the summary judgment motions, and Taylor appealed, contending that it erred in doing so.

## Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any one of the grounds is meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The motion must state the specific grounds relied upon for summary judgment. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W .3d 211, 215 (Tex. 2003)).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional summary judgment standard. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). In a no-evidence motion for summary judgment, the

8

movant asserts that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

## Discussion

### A. Legal malpractice claims

A legal malpractice action is based on negligence. *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 67 (Tex. App.—El Paso 2010, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). A plaintiff bringing a

9

legal malpractice claim must show that "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 55 (Tex. App—Houston [1st Dist.] 2008, pet. denied) (quoting *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004)). If the legal malpractice claim is based on the attorney's acts during prior litigation, a plaintiff must prove that, but for the attorney's breach of duty, the plaintiff would have been successful in the prior case. *Id.* (citing *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)); *see also Heath v. Herron*, 732 S.W.2d 748, 753 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (stating that defendant in underlying case claiming malpractice must show a "meritorious defense," that is, a defense "that, if proved, would cause a different result upon retrial of the case"). This causation burden in this type of legal malpractice claim has been called the "suit-within-a-suit" requirement. *See Greathouse*, 982 S.W.2d 165 at 173. The "suit within a suit" causation requirement applies both to claims for legal malpractice and claims for a former attorney's alleged breach of fiduciary duty when the damages sought are based on the attorney's wrongful conduct in prior litigation. *See Finger v. Ray*, 326 S.W.3d 285, 292 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Greathouse*, 982 S.W.2d 165 at 173.

10

Generally, expert testimony is required to prove causation in a legal malpractice suit. *See Alexander*, 146 S.W.3d at 119–20. Proximate cause has two elements: cause in fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). "These elements cannot be established by mere conjecture, guess, or speculation." *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Id.*

### 1. Taylor's claims against Cersonsky

Cersonsky moved for summary judgment on all Taylor's claims on the ground that Cersonsky's withdrawal, and Causey's substitution, broke the chain of causation. We agree that Taylor failed to raise a fact issue as to how Cersonsky's representation of Taylor caused Taylor's alleged damages.

When an attorney withdraws from representing a client, and another attorney agrees to represent the client, the first attorney does not cause the harm suffered by the client if nothing the first attorney did or failed to do hampered the second attorney's representation. *See Blake v. Lewis*, 886 S.W.2d 404, 408 (Tex. App.—Houston [1 Dist.] 1994, no writ); *see also Medrano v. Reyes*, 902 S.W.2d 176, 178 (Tex. App.—Eastland 1995, no writ) (holding, in legal malpractice suit for failure to file action within limitations period, that firm should not be liable when it

11

withdrew twenty-one months before limitations period expired giving former client sufficient time to employ other counsel). Here, Cersonsky represented Taylor for approximately five months before withdrawing. At the time of his withdrawal in July 2006, no trial date had been set and no scheduling order had been entered. Causey took over the representation approximately eighteen months before the eventual mediation and trial date. In his affidavit, Donato does not assert that anything Cersonsky did in that five-month period hampered or interfered with Causey's later representation. Rather, he opines generally that both Cersonsky and Causey should have begun their factual investigation of the case earlier than they did, but nowhere explains how Cersonsky's doing so would have yielded a better outcome for Taylor. We hold that Taylor failed to raise a fact issue concerning the element of causation on his malpractice claim against Cersonsky. *See Blake*, 886 S.W.2d at 408; *Medrano*, 902 S.W.2d at 178.

We overrule the portion of Taylor's point of error with respect to the summary judgment on Taylor's malpractice claims against Cersonsky.[4]

### 2. Taylor's claims against Causey

As part of his motion for summary judgment, Causey asserted that there was no evidence of the element of causation. Taylor responded with summary judgment evidence, including an affidavit from a legal expert, Randy Donato. In

---

[4] In addition, the discussion below concerning the causation in the case against Causey applies equally to causation in the case against Cersonsky.

his affidavit, Donato identifies a number of acts and omissions he contends amount to malpractice by Causey. The alleged breaches of the standard of care include: failing to interview the investigating officer and other witnesses early in the representation; failing to raise and develop a defense based on Fullen's failure to wear a seat belt, specifically, failing to consult or retain appropriate experts necessary to prove a seat belt defense; and generally carrying out the representation in such a way to save Allstate money rather than pursuing Taylor's best interests. Donato avers that Causey "failed to defend in a reasonable manner the 'how this accident happened' issues."

Donato's affidavit addresses the suit within a suit requirement by positing how a hypothetical lawyer "uninfluenced by the fact he is being paid by an insurance company, would have defended the underlying lawsuit." He avers that, properly handled, the seat belt defense "would have significantly reduced Mr. Fullen's claims and likely eliminated them altogether." In other words, Donato opines that if a lawyer acting in Taylor's best interest had defended the case properly, and if Taylor had proceeded to trial, the seat belt defense would have been a viable defense and yielded an outcome in which Taylor's liability would have been less than the $3 million Taylor paid to settle the case. Donato accords the seat belt defense such importance that he concludes that, if it had been properly developed in this case, "the value of the case should have been reduced to within

13

Allstate's policy limits." In short, according to Donato, satisfactory counsel would have saved Taylor from contributing a single dollar toward a settlement or judgment.

An expert may not "simply . . . opine that the defendant's negligence caused the plaintiff's injury." *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). An expert must also "explain how and why the negligence caused the injury." *Id.* In other words, an expert must sufficiently link his conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). The factfinder must have access to the facts and data underlying an expert's testimony in order "to accurately assess the testimony's worth." *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007). An opinion on causation stated without the underlying facts is conclusory. *See Jelinek*, 328 S.W.3d at 536; *Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008). A conclusory opinion is not probative and will neither support nor defeat a summary judgment. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009); *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999) ("[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness."). An expert "cannot simply say, 'Take my word for it; I know . . . .'" *Burrow*, 997 S.W.2d at 236.

14

In *Burrow*, the Supreme Court of Texas examined an affidavit in a legal malpractice case. *Burrow*, 997 S.W.2d at 235. Former clients sued their attorneys, asserting that the attorneys had improperly settled their suits and allocated damages among the clients. *Id.* at 232–33. The attorneys moved for and were granted summary judgment by the trial court. *Id.* at 233. In support of their motion for summary judgment, the attorneys included an affidavit from an expert who opined that the attorneys' actions did not cause the clients any damages. *Id.* at 235. The expert stated there were several important considerations in considering the reasonableness of the settlement amounts, he considered those factors, and he concluded that the clients were all reasonably compensated and, therefore, had not been harmed by the alleged malpractice. *Id.* The Supreme Court explained that because the expert did not explain why the settlements were fair and reasonable for each client, the affidavit was conclusory. *Id.* at 236.

We conclude that, like the deficient affidavit in *Burrow*, Donato's affidavit fails to sufficiently explain how Causey caused Taylor's damages. More specifically, it fails to explain the basis for Donato's opinion that a lawyer properly handling the case would have achieved the favorable outcome Donato posits. The main flaw in Donato's analysis is the causal leap it makes with respect to legal rulings the trial court would have made regarding the seat belt defense had Taylor

15

proceeded to trial. The basis for these leaps is nowhere explained, but the assumptions themselves are embedded in a key passage of Donato's affidavit:

> The most glaring failure I have found in failing to do that which a lawyer exercising independent judgment would have done, is the failure of [Cersonsky and Causey] to investigate the non-use of seatbelt issues applicable specifically to Mr. Fullen. For years as a defense attorney, I was frustrated by the fact that Texas Law did not allow in front of juries the use or non-use of seatbelts. It is proven by the statistics countless injuries and specifically head injuries are avoided when occupants wear seatbelts.

> In 2003, our Texas Legislature repealed sections 545.412d and 545.413[g] of the Texas Transportation Code. In repealing these sections, the Legislature gave defense lawyers, a new and potentially case winning defense if a Plaintiff was not wearing a seatbelt and if his injury would have been prevented by the use of a seatbelt. The way seat belt use is submitted in Texas, gives defense counsel essentially two bites at the apple. A jury will be asked to assign fault on a proportionate basis as between parties for causing the accident. After the jury has answered that question, *a seat belt inquiry question is submitted which inquires essentially, as to how much of a, Plaintiff's injury would have been prevented had he been wearing a seatbelt*. Both fault and injury causation are used to establish if and how a defendant may owe.

> . . . . Competent Plaintiff counsel throughout the state of Texas for years fought against the repeal of the provisions of the Transportation Code making the use or non-use of seatbelts inadmissible. They did so for a very good reason, and that is failing to wear seatbelts is and will continue to be a devastating defense against their clients.

> . . . . Accordingly, had either of these defense lawyers, retained by Allstate Insurance Company complied with the standard of care in timely locating and retaining experts . . . *it is more probable than not that a trial would have resulted in a defense verdict* and pretrial settlement would have been accomplished for the available insurance policy limits or less.

16

(Emphasis added.) Before its repeal in 2003, Texas Transportation Code section 545.413(g) provided, "Use or nonuse of a safety belt is not admissible evidence in a civil trial . . . ." Act of Apr. 21, 1995, 74th Leg., R.S., ch. 165, §1, sec. 545.413(g), 1995 Tex. Gen. Laws 1025, 1644, *repealed by* Act of June 1, 2003, 78th Leg., R.S., ch. 204, §8.01 2003 Tex. Gen. Laws 847, 863. Donato assumes that, with the repeal of section 545.413(g), admissibility of an injured party's failure to wear a seat belt is a foregone conclusion. Donato likewise assumes that the trial judge would have reduced Taylor's liability by the percentage of the injury that would have been avoided had Fullen worn a seat belt, as found by the jury.

But Donato nowhere explains the basis for either of these leaps. That likely is because Texas law on these points is unsettled. *See Trenado v. Cooper Tire & Rubber Co.*, No. 4:08-cv-249 (S.D. Tex. Jan. 26, 2010) (noting absence of authorities discussing issue of seat belt usage since repeal of section 545.413(g)). Donato cited no authorities to support his view of how a trial court would rule on these questions. And our own research revealed no Texas Supreme Court or Texas appellate court cases discussing the significance or effect of the provision's repeal. Nor have we located Texas cases discussing whether or how an injured party's failure to wear a seat belt should be submitted to the jury. Indeed, the few federal court opinions addressing these issues reached conclusions that conflict with

17

Donato's assumptions about how the hypothetical Chambers County trial court would have ruled.

One federal court concluded that the legislature's repeal in 2003 of section 545.413(g) "does not indicate that [evidence of a party's failure to wear a seat belt] is now per se admissible." *Idar v. Cooper Tire & Rubber Co.*, C.A. No. C-10-217, 2011 WL 2412613, at * 9 (S.D. Tex. June 6, 2011); *see also Trenado v. Cooper Tire & Rubber Co.*, C.A. No. 4:08-cv-249 (S.D. Tex. Jan. 26, 2010) (noting that the legislative intent was to change the admissibility of seat belt usage from a substantive to a procedural issue and concluding that, while Texas law does not preclude the admissibility of seat belt evidence, admissibility would be decided by trial court according to evidentiary rules). This casts doubt on Donato's assumption that the fact that Fullen failed to wear a seat belt would be the deciding factor in the jury's deliberations had Taylor proceeded to trial.

The same can be said of Donato's assumption that Taylor's liability would have been reduced due to Fullen's failure to wear a seat belt. *Trenado* and *Idar* each made two holdings that undercut Donato's assumption on this point: (1) the alleged failure of the injured person to wear a seat belt did not contribute to the accident, and, under current Texas law, it should not give rise to a contributory negligence defense, *Idar*, 2011 WL 2412613, at *11; *Trenado*, at *41–42, and (2) the injured person's failure to wear a seat belt did not constitute subsequent

18

negligence and therefore does not give rise to a defense of failure to mitigate damages that would yield a reduction in recovery. *Idar*, 2011 WL 2412613, at 11–12; *Trenado*, at 38–39.

Donato's analysis nowhere explains the specific legal basis for his opinion that earlier development of the seat belt defense by Causey probably would have yielded a more favorable result at trial. Instead, his analysis leaps from the fact of section 545.413(g)'s repeal to his conclusion that Taylor would have obtained a better outcome at trial had he been properly represented, without ever addressing the unsettled legal issues that the trial court would have confronted, or how or why he believes that Taylor would have obtained favorable rulings on them—and convinced a jury of their outcome-determinative nature—had Taylor proceeded to trial. Donato's failure to explain this analytical gap—together with the absence of any authority to suggest that the trial would have unfolded in the manner Donato suggests—lead us to conclude that Donato's opinion is insufficient to raise a fact issue on causation. *Pollock*, 284 S.W.3d at 818 (conclusory opinion is not probative and will not defeat a summary judgment); *Burrow*, 997 S.W.2d at 235 (an expert's opinion is conclusory and will not support summary judgment if it does not contain the basis or reasoning for the opinion).

In addition, Donato does not address other significant legal and factual hurdles Taylor faced in the underlying lawsuit. For example, Donato does not

19

address the undisputedly severe and tragic nature of Fullen's injury or the substantial estimated cost of his medical care needs and how these facts may have influenced a jury. Additionally, Fullen had amended his petition to assert a fraudulent transfer claim based on Taylor's attempt to shield assets from a judgment in Fullen's favor. Taylor had also lost a summary judgment on Fullen's gross negligence claim, leaving the possibility of Taylor being liable for exemplary damages at trial. Finally, the police report and both accident reconstruction expert reports concluded that Taylor was a cause of the accident. Under the facts of this case, we conclude that Donato's affidavit is insufficient to raise a fact issue on whether the alleged malpractice caused injury to Taylor because it does not show that the results of a trial probably would have been better for Taylor. *See Pollock*, 284 S.W.3d at 818; *Burrow*, 997 S.W.2d at 235; *see also Cooper v. Harris*, 329 S.W.3d 898, 904 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (finding expert testimony insufficient to support jury's verdict on legal malpractice claim because expert who testified that malpractice plaintiff would have recovered a money judgment had his claims been prosecuted by a reasonably prudent attorney did not "address the complicated factual and legal issues" in the underlying case); *Kemp v. Jensen*, 329 S.W.3d 866, 871 (Tex. App.—Eastland 2010, pet. denied) (affirming summary judgment on legal malpractice claim where expert opined that malpractice plaintiff would have had a much better opportunity of obtaining a

20

favorable jury verdict but for the alleged malpractice, but did not explain the basis of the statement).[5] Accordingly, we hold that the trial court correctly granted summary judgment on Taylor's legal malpractice claims.

## B. Gross negligence claims

Taylor pleaded that his lawyers' acts and omissions rose to the level of gross negligence. Texas law is well-settled that, in order to prevail on a claim for gross negligence, a plaintiff must first show ordinary negligence. *Doe v. Messina*, 349 S.W.3d 797, 804 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)). Here, we have concluded that the summary judgment on the negligence claims against Cersonsky and Causey was proper. Therefore, Taylor's gross negligence claims also fail. We hold that the trial court properly granted summary judgment on Taylor's gross negligence claims against Cersonsky and Causey.

---

[5] Donato's affidavit can also be read to conclude that proper handling of the case would have reduced the amount Taylor had to pay to settle the case, had he decided not to proceed to trial. That theory is also insufficient to survive summary judgment, because there is no evidence that Fullen's representatives would have accepted a settlement offer lower than $3 million. *See Tolpo v. Decordova*, 146 S.W.3d 678, 684 (Tex. App.—Beaumont 2004, no pet.) (affirming summary judgment based on lack of fact issue on causation where there was no evidence that other party in underlying suit would have entered into the contract had former counsel proposed special provision, the omission of which was the basis of former client's malpractice claim).

## C. Breach of fiduciary duty claims

The parties dispute whether Taylor asserted only claims of legal malpractice or whether he also stated a breach of fiduciary duty claim. Taylor contends that his allegations about allegedly divided loyalties give rise to a breach of fiduciary duty claim. Specifically, he claims Cersonsky and Causey breached their fiduciary duties to Taylor by failing to disclose certain facts (the nature of their fee arrangement with Allstate and the fact that Fullen's medical lien could be waived) and by acting in the interests of Allstate and themselves (by allegedly skimping on Taylor's defense in order to keep Allstate happy and thereby secure other work for themselves in the future). The former lawyers argue that Taylor's allegations are nothing more than complaints about the adequacy of their representation and therefore can only give rise to ordinary malpractice claims. *See Greathouse*, 982 S.W.2d at 172 (the test to determine whether a plaintiff asserts only malpractice claims, generally, is whether the "crux" of each separate claim is that the lawyer "did not provide adequate legal representation.").

Our resolution of this case is based on Taylor's failure to raise a fact issue with respect to the suit within a suit causation element of his claims. This causation is an element of a legal malpractice claim and a breach of fiduciary duty

claim for damages based on representation in underlying litigation.[6] *See Finger*, 326 S.W.3d at 291–92 (former client asserting breach of fiduciary duty claim based on representation in prior suit must prove "suit within a suit" causation); *Smith v. Aldridge*, No. 14-11-00673-CV, 2012 WL 1071246, at *6 (Tex. App.—Houston [14th Dist.] March 29, 2012, no pet.) (assuming malpractice plaintiff's allegations supported an independent action for breach of fiduciary duty, plaintiff was required to prove "suit within a suit" to defeat summary judgment on that claim). Because Taylor had the burden—but failed—to raise a fact issue on causation, it is immaterial whether Taylor asserted only malpractice claims, on the one hand, or whether he asserted both malpractice and breach of fiduciary duty claims, on the other. Even if some of his allegations could form the basis for a breach of fiduciary duty claim, Taylor's failure to meet his burden with respect to causation vitiates both. We express no opinion as to whether Taylor asserted claims for breach of fiduciary duty as distinct from legal malpractice; rather, we conclude that, even if he had, his failure to raise a fact issue on the element of causation would render summary judgment proper on any such claim. *See Finger*, 326 S.W.3d at 291–92; *Smith*, 2012 WL 1071246, at *6.

---

[6]   We note that Taylor sought only actual and exemplary damages in this case. In breach of fiduciary duty cases in which the former client seeks disgorgement of fees paid to the attorney, the former client need not prove actual damages. *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999). Because he did not seek disgorgement of fees, Taylor was required to prove Causey and Cersonsky's breach of fiduciary duties caused his actual damages.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.